IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROTSTEIN & SHIFFMAN, LLP, )
    Plaintiff, )
     )
     )   Case No. **25-1319 T**
v. )
     )
UNITED STATES OF AMERICA, )
    Defendant. )

## COMPLAINT

Rotstein & Shiffman, LLP ("Plaintiff") files this Complaint against the United States of America ("Defendant") for a refund of the Employee Retention Credit for the fourth quarter of 2020 and first quarter of 2021, and alleges as follows:

## THE PARTIES

1. Rotstein & Shiffman, LLP is a California corporation with its principal place of business at 309 Oakridge Boulevard, Suite B, Daytona Beach, Florida 32118.

2. The United States of America is the proper defendant because this Complaint seeks refund of taxes paid to (and refundable credits owed from) the Internal Revenue Service ("IRS"), a political subdivision of the United States.

3. The Plaintiff has not initiated any other lawsuits in state or federal court dealing with the same or similar facts as this action.

4. A statement required under R.C.F.C. 9(m)(2)(B) is attached as **Exhibit A**.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1) and 28 U.S.C. § 1491.

## LEGAL BACKGROUND

### Federal Employment Taxes

6. Plaintiff is claiming a refund of Form 941 employment taxes ("Form 941 taxes") and the refundable Employee Retention Credit ("ERC").

7. Employers are required by law to withhold federal income taxes and Federal Insurance Contributions Act ("FICA") taxes from their employees' wages, remit these

withholdings, and report them to the IRS on tax Form 941. The portion of Form 941 taxes attributable to the employees' withholdings is often referred to as the "Trust Fund" portion.

8. Employers are also responsible for paying FICA taxes that they owe, often referred to as the "employer portion," and reporting such taxes to the IRS on Form 941. 26 U.S.C §§ 3102 and 3111.

9. Employers are usually obligated to file with the IRS the Form 941 quarterly. 26 U.S.C § 6011; 26 C.F.R. § 31.6071 (a)-1.

## Employee Retention Credit

10. In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Pub. L. 116-136 (Mar. 27, 2020). Section 2301 of the CARES Act provided for the ERC to be issued to eligible employers on qualified wages paid to their employees. Pub. L. 116-136, § 2301. The ERC program was amended and extended under the Consolidated Appropriations Act of 2021, Pub. L. 116-260, § 206 (Dec. 27, 2020), and the American Rescue Plan Act of 2021, Pub. L. 117-2, § 3134 (Mar. 11, 2021), and terminated under the Infrastructure, Investment and Jobs Act, Pub. L. 117-58, § 80604, (Nov. 15, 2021). *See also* 26 U.S.C. § 3134 (codifying section 2301 of the CARES Act).

11. A business that is an eligible employer that pays qualified wages after March 12, 2020, and through December 31, 2021, is entitled to claim the ERC against its Form 941 taxes on the applicable Form 941 return for that quarter.

12. Under section 2301(b)(3) of the CARES Act, if the amount of the credit exceeds the amount of Form 941 taxes for any applicable quarter, then the excess is treated as an overpayment and refunded to the employer. *See* 26 U.S.C. § 3134(b)(3).

## General Qualifying Requirements

### *Employer Eligibility*

13. An eligible employer is one that carried on a trade or business during calendar years 2020 and 2021 and, with respect to any calendar quarter for which the business experienced one of the following:

 a. Its operations were fully or partially suspended due to orders issued by a governing authority in response to COVID-19 ("Full or Partial Suspension Test") that limited commerce, travel, or group meetings; or
 b. The business experienced a significant decline in gross receipts ("Gross Receipts

Test") for any calendar quarter of 2020 and/or the first three quarters of 2021[1] compared to the corresponding quarter of 2019.

26 U.S.C. § 3134(c)(2).

### *Qualified Wages*

14. For the purposes determining the ERC for quarters in 2020 and 2021, "qualified wages" includes only the wages paid to their employees (as defined by 26 U.S.C. § 3231(c)), but also expenses the employer paid to provide and maintain a group health plan (only to the extent that the amounts are excluded from the gross income of the employees). 26 U.S.C. §§ 3134(c)(3), (c)(5)(A), (c)(5)(B).

15. However, this term is subject to certain additional restrictions: to claim the credit for quarters in 2020, the employer must have averaged no more than 100 employees in 2019. To claim the credit for quarters in 2021, the employer must have averaged no more than 500 employees in 2019. 26 U.S.C. § 3134(c)(3).

### *Calculating the Credit*

16. For quarters in 2020, the employee retention credit is limited to fifty percent (50%) of qualified wages that an eligible employer pays to an employee in a calendar quarter. 26 U.S.C. § 3134(b)(1). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee for the entire calendar year of 2020. 26 U.S.C. § 3134(b)(1).

17. For quarters in 2021, the employee retention credit is limited to seventy percent (70%) of qualified wages that an eligible employer pays in a calendar quarter. 26 U.S.C. § 3431(a). The maximum amount of qualified wages that the credit can be claimed against is $10,000 per employee *per quarter* in 2021. 26 U.S.C. § 3134(b)(1).

### **FACTUAL BACKGROUND**

18. Plaintiff is a personal injury law firm representing accident and injury victims throughout Central Florida. Plaintiff also represented clients in Social Security Administration administrative proceedings.

19. Jonathan Rotstein and Michael Shiffman each own a fifty percent (50%) interest in Plaintiff.

20. Plaintiff had on average less than 100 full-time employees during calendar year

---

[1] A business may be eligible to receive an ERC for the fourth quarter 2021 if it qualifies as a "recovery startup business." *See* 26 U.S.C. § 3134(c)(2)(A)(ii)(III). Plaintiff does not qualify as such and thus does not seek an ERC for this quarter.

3

2019.

21. Plaintiff paid qualified wages to its employees in calendar years 2020 and 2021.

22. Plaintiff is not a party to any employee leasing arrangement and did not otherwise lease employees.

23. Plaintiff is not a part of an affiliated service group within the meaning of 26 U.S.C. § 414(m).

## The Relevant Governmental Orders

24. Throughout 2020 and 2021, several binding orders issued by the state of Florida, the Social Security Administration, and various Florida courts ("Relevant Governmental Orders"), significantly limited commerce in ways relevant to Plaintiff.

*Relevant Florida Governmental Orders*

25. On March 9, 2020, Florida Governor Ronald D. DeSantis issued Executive Order 20-52, declaring a State of Emergency for all of Florida.

26. On March 13, 2020, the Florida Supreme Court entered an order suspending all jury trials in the state.

27. On April 1, 2020, by Executive Order 20-91, Governor DeSantis directed all persons in Florida to limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities. The order designated "professional services, such as legal or accounting services" as essential.

28. Executive Order 20-112 dated April 29, 2020, deemed Florida's "Phase One Recovery," ordered all persons to continue to limit personal interactions outside the home, but expanded the list of services that people may provide or obtain.

29. Executive Order 20-139 dated June 3, 2020—"Phase Two Recovery"— expanded reopened services and encouraged all persons to follow appropriate social distancing and safety protocols issued by the Centers for Disease Control and Prevention ("CDC") and the Occupational Safety and Health Administration ("OSHA").

30. Executive Order 20-166, dated July 7, 2020, reaffirmed the state's status in Phase Two Recovery.

31. Phase Three Recovery began with Executive Order 20-244 dated September 25, 2020, which ordered that no COVID-19 emergency ordinance may prevent an individual from working or from operating a business.

32. The resumption of jury trials was staggered across the state, with criminal trials resuming as early as the fourth quarters of 2020. However, most civil jury trials were halted until at least the first quarter of 2021. The Seventh Judicial Circuit (Volusia, Flagler, St. Johns, and Putnam counties) resumed civil jury trials beginning March 11, 2021. The Ninth Judicial Circuit (Orange County) civil jury trials beginning April 30, 2021. Even after trials and other proceedings resumed, they were limited with social distancing and mask requirements. And cases whose proceedings were suspended during the pandemic were caught up in extensive court backlogs.

33. Executive Order 21-101, dated May 3, 2021, invalidated any emergency order issued by a political subdivision due to the COVID-19 emergency which restricted the rights or liberties of individuals or their business, effective July 1, 2021.

*Relevant Volusia County Governmental Orders*

34. On March 12, 2020, Volusia County Chair Ed Kelley declared a State of Local Emergency. Chair Kelley and later his successor, Jeff Brower, extended this declaration sixty-seven times, through June 29, 2021.

35. On March 17, 2020, Chief Judge Raul A. Zambrano of the Seventh Judicial District Court (which encompasses Volusia, Flagler, St. Johns, and Putnam counties) fully closed two of the district's courthouses. A third, the Volusia County Courthouse in DeLand, Florida, remained open for essential services. The district defined essential services as first appearances in criminal cases, juvenile delinquency proceedings, juvenile shelter proceedings, independency cases, as well as domestic violence injunctions and other sundry injunctions. It did not deem essential any proceedings relating to personal injury cases.

36. In subsequent orders, Chief Judge Zambrano allowed additional categories of judicial proceedings to be held in person. However, non-essential civil proceedings were the last to resume, with civil jury trials not resuming until March 2021.

*Relevant Social Security Administration Rules*

37. In March 2020, the Social Security Administration closed all Social Security Hearing Offices and ceased offering in-person administrative hearings. From March 2020 until March 2022, the agency offered hearings via telephone or online video conference.

38. The Social Security Administration also suspended all in-person consultative medical exams ("CEs")—a step of many administrative proceedings—from March 2020 to May 2020.

39. Even after in-person hearings and CSEs began again, cases were stuck in an extensive backlog as local Disability Determination Services prioritized high need cases in accordance with the Social Security Administration's reopening guidelines.

**Plaintiff's Operations Were Impacted by The Relevant Governmental Orders**

40. Plaintiff's ability to provide its services was more than nominally impacted by Relevant Governmental Orders.

41. Plaintiff's primary business lines involve litigating cases on behalf of clients in Florida state courts and before the Social Security Administration. In 2020 and 2021, both business lines were severely restricted by the Relevant Governmental Orders.

42. Even when the Relevant Governmental Orders related to state court and administrative proceedings lifted, Plaintiff's clients' cases were in limbo, as backlogs caused by the Relevant Governmental Orders lasted well beyond the orders them.

43. Additionally, because of the suspension of functions critical to state court and administrative cases caused by the Relevant Governmental Orders, and later the backlog caused by the same, Plaintiff struggled to bring on new clients.

44. These suspensions and backlogs of Plaintiffs' client's cases in both of its primary business lines—state court and Social Security Administration proceedings—caused by the Relevant Governmental Orders had a more than nominal impact on Plaintiff's business.

45. Particularly, in the quarter ended December 31, 2020, gross receipts from Plaintiff's Social Security Administration cases were down nineteen percent (19%) compared to the same quarter in 2019. In 2019, that business line accounted for more than half of Plaintiff's overall business. Thus, the decrease in gross receipts from this business line significantly impacted Plaintiff's overall business.

46. As a result of this more than nominal impact to its business operations, Plaintiff filed Forms 941-X claiming entitlement to ERCs based on qualified wages as follows:

| Quarter Ended | Qualified Wages | ERC (Excluding Interest) |
|---|---|---|
| December 31, 2020 | $449,526.36 | $224,763.18 |
| March 31, 2021 | $470,577.32 | $329,404.12 |
| June 30, 2021 | $426,870.07 | $324,009.05 |
| September 30, 2021 | $514,923.17 | $360,446.22 |
| **Total ERC Claimed (Excluding Interest)** | | **$1,238,622.57** |

47. When calculating its ERC, Plaintiff did not take into account qualified wages paid to any individuals who directly or indirectly owned a majority in Plaintiff, or qualified wages paid to any relatives of those individuals.

48. While Plaintiff applied for and had forgiven a loan under the first round of the Paycheck Protection Program ("PPP"), Plaintiff did not take into account wages covered by the

6

forgiven PPP loan in calculating its qualified wages for the ERC.

49. Prior to this filing, the IRS issued to Plaintiff overpayments for the quarters ended June 30, 2021, and September 30, 2021.

### COUNT I: PLAINTIFF IS ENTITLED TO A REFUND FOR Q4 2020

50. On or before April 15, 2021, Plaintiff filed an original Form 941 for the employment tax quarter ended December 31, 2020 ("Q4 2020").

51. Plaintiff has no outstanding employment tax liability for Q4 2020.

52. Plaintiff paid qualifying wages of $449,526.36 in Q4 2020 and calculated an ERC of $224,763.18 for the quarter.

53. On or before December 14, 2022, Plaintiff filed a Form 941-X for Q4 2020, claiming a refund of tax and ERC in the amount of $224,763.18 plus interest, with the IRS Service Center in Cincinnati, Ohio. Attached as **Exhibit C** is a true and correct copy of Plaintiff's filed Form 941-X for Q4 2020.

54. The IRS Form 941 Account Transcript, which provides a detailed record of transactions (including filings, assessments, and refunds), for Q4 2020 confirms the IRS received the Form 941-X on December 14, 2022. Attached as **Exhibit B, at 1** is true and correct copy of the IRS Form 941 Account Transcript for Q4 2020.

55. Plaintiff is a qualified employer eligible for an ERC for Q4 2020 under the Full or Partial Suspension Test because it paid qualified wages to employees and the Relevant Governmental Orders had more than a nominal impact on Plaintiff's operations, leading to a partial suspension of its business operations.

56. Plaintiff timely filed its Q4 2020 refund claim on Form 941-X within three years of filing its original Form 941 for this period.

57. More than six months have elapsed since the Plaintiff filed its Q4 2020 refund claim with the IRS, and the IRS has not disallowed or otherwise processed Plaintiff's claim.

58. Thus, Plaintiff is entitled to a refund of $224,763.18 plus interest for Q4 2020.

### COUNT II: PLAINTIFF IS ENTITLED TO A REFUND FOR Q1 2021

59. On or before April 30, 2021, Plaintiff filed an original Form 941 for the employment tax quarter ended March 31, 2021 ("Q1 2021").

60. Plaintiff has no outstanding employment tax liability for Q1 2021.

61. Plaintiff paid qualifying wages of $470,577.32 in Q1 2021 and calculated an ERC of $329,404.12 for the quarter.

62. On or before December 14, 2022, Plaintiff filed a Form 941-X for Q1 2021, claiming a refund of tax and ERC in the amount of $329,404.12 plus interest, with the IRS Service Center in Cincinnati, Ohio. Attached as **Exhibit D** is a true and correct copy of Plaintiff's filed Form 941-X for Q1 2021.

63. The IRS Form 941 Account Transcript, which provides a detailed record of transactions (including filings, assessments, and refunds), for Q1 2021 confirms the IRS received the Form 941-X on December 14, 2022. Attached as **Exhibit B, at 2** is true and correct copy of the IRS Form 941 Account Transcript for Q1 2021.

64. Plaintiff is a qualified employer eligible for an ERC for Q1 2021 under the Full or Partial Suspension Test because it paid qualified wages to employees and the Relevant Governmental Orders had more than a nominal impact on Plaintiff's operations, leading to a partial suspension of its business operations.

65. Plaintiff timely filed its Q1 2021 refund claim on Form 941-X within three years of filing its original Form 941 for this period.

66. More than six months have elapsed since the Plaintiff filed its Q1 2021 refund claim with the IRS, and the IRS has not disallowed or otherwise processed Plaintiff's claim.

67. Thus, Plaintiff is entitled to a refund of $329,404.12 plus interest for Q1 2021.

WHEREFORE, Plaintiff prays that this Honorable Court:

A. Award judgment in favor of Plaintiff and against the United States in the amounts of:

  i. $224,763.18 plus interest for Plaintiff's Form 941 taxes/ERC credit for the employment tax quarter ended December 31, 2020;

  ii. $329,404.12 plus interest for Plaintiff's Form 941 taxes/ERC credit for the employment tax quarter ended March 31, 2021; and

  iii. Any other interest, costs, and attorney's fees.

B. Grant any further relief this Court may find just and proper.

Dated: August 8, 2025.                    Respectfully Submitted,

*/s/ Christina Tallulah Lanier*
CHRISTINA TALLULAH LANIER
D.C. Bar No. 1779680

*On Behalf Of:*
BROTMAN LAW
402 West Broadway, Suite 800
San Diego, CA 92101
Main Office: (619) 378-3138
Facsimile: (619) 378-3039
Email: tlanier@sambrotman.com